Tri Huynh
4015 134th Ave SE
Bellevue, WA 98006
Telephone: (408) 757-5516
Email: trimhuynh@outlook.com

Pro Se Plaintiff

Theodore J. Boutrous, Jr., SBN 132099
Rachel S. Brass, SBN 219301
Gibson, Dunn & Crutcher LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8200
Facsimile: (415) 374-8458
Email: tboutrous@gibsondunn.com
Email: rbrass@gibsondunn.com

Eugene Scalia, SBN 151540
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Telephone: (202) 955-8500
Facsimile: (202) 530-9606
Email: escalia@gibsondunn.com

Attorneys for Defendants
Walmart, Inc., Wal-Mart Associates, Inc., and
Wal-Mart.com USA, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRI HUYNH,<br><br>             Plaintiff(s),<br><br>         vs.<br><br>WAL-MART STORES, INC., a Delaware Corporation; WAL-MART ASSOCIATES, INC., a Delaware Corporation; WAL-MART.COM, INC., a Delaware Corporation; and DOES 1 through 50, inclusive.<br><br>             Defendant(s). | Case No.: 3:18-cv-01631-VC<br><br>**JOINT DISCOVERY LETTER REGARDING THE CONFIDENTIALITY DESIGNATION OF 65 PAGES OF DOCUMENTS PRODUCED BY THE DEFENDANTS**<br><br>District Judge:  Hon. Vince Chhabria<br>Magistrate Judge:  Hon. Sallie Kim |

1    Pursuant to the Standing Order for Magistrate Judge Sallie Kim, this joint discovery letter

2    provides the Court a joint statement of the Parties' dispute regarding Defendants' designation as

3    "Confidential" 65 pages of documents produced by Defendants under the Protective Order gov-

4    erning this matter.

5    In advance of filing this letter, Plaintiff emailed the Defendants on 5/22/2019 asking them

6    to confirm their position regarding the designation of 68 pages they had produced as "Confiden-

7    tial."  On 5/24/2019, the Defendants responded that they would re-designate WM00001609 and

8    pointed out that WM00005997 and WM00005999 were not produced as confidential.  The De-

9    fendants stated that they believed the confidential designation was appropriate as to the remaining

10   documents.  The parties were unable to resolve this dispute thus requiring Court's intervention in

11   this matter.

12   By signing below, the Parties attest that they have complied with Section 9 of the North-

13   ern District's Guidelines for Professional Conduct regarding discovery prior to filing this joint let-

14   ter.

15   DATED: June 3, 2019          **Gibson, Dunn & Crutcher LLP**

16   By: /s/ Rachel S. Brass
     Attorneys for Defendants Walmart, Inc.,

17   Wal-Mart Associates, Inc., and
     Wal-Mart.com USA, LLC

18

19   By: /s/ Tri M. Huynh
     Plaintiff, Proceeding Pro Se

20   **PRO SE PLAINTIFF ATTESTATION**

21   I, Tri M. Huynh, am the ECF User whose ID and password are being used to file this

22   **JOINT DISCOVERY LETTER REGARDING THE REDESIGNATION OF 65 PAGES**

23   **OF DOCUMENTS PRODUCED BY THE DEFENDANTS TO NON-CONFIDENTIAL.**

24   In compliance with N.D. Cal. L.R. 5-1(i)(3), I hereby attest that the concurrence in the

25   filing of the document has been obtained from the other signatory.

26

27   By:  /s/ Tri M. Huynh
     Tri Huynh

28

2

**JOINT DISCOVERY LETTER**                                    **CASE NO. 3:18-CV-01631-VC**

## Nature of the Dispute

At issue here is a dispute over Defendants' designation of certain documents as "Confidential" under the terms of the Protective Order and ESI Protocol negotiated by the parties and approved and entered by Judge Chhabria in this matter. *See* Dkt. 36–38. On April 3, 2019, Plaintiff emailed the Defendants a letter outlining his arguments regarding why they should re-designate 68 pages of documents currently designated as Confidential. Defendants responded on April 5, declining to re-designate documents but agreeing to provide explanations of their position and to meet and confer on the matter. The parties met and conferred via telephone on April 15, 2019. Defendants continued to stand by their original confidentiality designations but suggested that to the extent Plaintiff wished to file any particular page of a document in connection with any motion, that the parties discuss the specific document in late June or early July, following the Court-ordered Settlement Conference, to see if under-seal motions could be avoided or reduced.

The parties agreed to do that, and calendared June 27, 2019 for that discussion. On May 22, 2019, for undisclosed reasons, Plaintiff decided that a more immediate resolution of the issue was required, cancelled the June 27 meet and confer call, and resumed his challenge to the Defendants' designations. On May 24, 2019, Defendants agreed to remove the confidentiality designation from one document, which contained notes from Plaintiff's exit interview from Walmart. Defendants also pointed out that two other documents challenged by Plaintiff were in fact never produced as confidential by Defendants. Defendants otherwise confirmed that they believe they have appropriately designated the disputed documents. Walmart deposed Plaintiff on May 20, 2019. A Settlement Conference with Magistrate Judge Laurel Beeler is set for June 12, 2019. Fact discovery closes on July 19, 2019. The final pretrial conference is set for January 27, 2020, and trial is scheduled for February 10, 2020. *See* Dkt. 51.

## Plaintiff's Position

On the 2/11/2019 discovery conference call with the Court, Plaintiff asked the Court for guidance on what options are available to him if he believes there may have been professional misconducts in this case. On that same day, Plaintiff sent a letter to the Defendants' counsels reemphasizing

his concerns. To Plaintiff's surprise, on the morning of 2/12/2019, the Defendants released an additional 2,350 pages of documents.  Many of these documents were responsive to Plaintiff's previous requests. The Defendants designated roughly 88% of the 6,026 pages produced as Confidential. Below is a summary of the Defendants' position regarding this dispute, **1**) "Finally, you have requested the removal of confidentiality designations on 55 pages of documents that you agree are covered under the Protective Order.  In other words, you are not challenging Defendants' application of the Protective Order but instead objecting to the underlying Order itself. As we have discussed previously, this Order was drafted in accordance with the model Protective Order for the Northern District of California, agreed to by both parties, and ordered by Judge Chhabria. We see no reason to revisit it now.", **2**) "Second, it is also important to note that confidentiality designations are applied on a document-by-document level, rather than a page-by-page level. Thus, for example, even if one page in a 144-page report may not be confidential on its face, the page may be properly designated as confidential in the context of the entire document.", **3**) "As we discussed, attached please find the ESI protocol applicable to this litigation.  As we pointed out during our call on April 15, section 9 of the Protocol provides that parties can produce only a single copy of identical ESI. We also note that sections 2 and 5 require the parties to make a confidentiality designation as it applies to an entire document, as opposed to selected pages of documents. This prevents the Defendants from producing the same document twice with conflicting confidentiality designations or designating specific pages of otherwise confidential documents as non-confidential.", and **4**) "Separately, Fed. R. Civ. P. 34(b)(2)(E)(i) requires that parties "produce documents as they are kept in the usual course of business. This prevents Walmart from breaking up a single document in its files into confidential and non-confidential portions for discovery purposes.".  Below are Plaintiff's responses to the Defendants' four arguments stated above: **Argument #1**: In Plaintiff's 4/1/2019 letter, he didn't challenge the Protective Order.  On the contrary, he leveraged Section 6 of the Protective Order to challenge the Defendants' confidentiality designation of 68 pages of documents, **Argument #2:** The Defendants' argument is flaw because according to Section 5.1 and 5.2(a) of the 9/14/18 Protective Order, documents could be designated as confidential at a page by page level as well as a portion of a page when it

qualifies under the appropriate standards, **Argument #3**: The Defendants' argument that the ESI Protocol Order prevented them from doing a page-by-page confidentiality designation was flaw because the Protective Order takes precedent over the ESI Protocol Order i.e. paragraph 16 on page 8 of the ESI Protocol stated - "Nothing in this protocol shall be construed to affect, modify or amend the parties' Stipulated Protective Order filed with the Court.", and **Argument #4**: The Defendants' argument that as per , Fed. R. Civ. P. 34(b)(2)(E)(i) they can't break up a single document into confidential and non-confidential contradicted the Court's decision in Paradigm Alliance v. Celeritas Technologies, LLC, 248 F.R.D. 598 (D. Kan. 2008) where the Court specifically found inappropriate defendant's practice of designating an entire email string as "AEO" because only one portion of the email string contained such confidential information.

## Arguments

### Page 1 of Ex. A (15 Pages) Is Not in Scope of the Protective Order

Section 3 (Scope) of the Protective Order states that any information known to the Receiving Party prior to the disclosure and any information that is in the public domain at the time of disclosure is not in Scope of the Protective Order.  Page 1 of Ex. A is not protected from disclosures because it is outside the scope of the Protective Order.  **Item # 4** in Ex. A is an email from Seth Beal to Dough McMillon, Marc Lore and other Walmart's Senior Executives regarding the status of Walmart's Marketplace e.g. the total number of SKUs in early October, 2016.  This information was already in the public domain at the time of disclosure to Plaintiff i.e. it's on paragraph 62 of Plaintiff's complaint, and on page 3 and 14 at https://cdn.corpo-rate.walmart.com/73/c7/5020f02d49dd8dedb0c465ccd0f7/event-transcript.pdf , where Dough McMillon, Walmart's CEO, and Marc Lore, Walmart.com's CEO, disclosed the total number SKUs to investment analysts at Walmart's 23rd Annual Meeting on Oct 6, 2016.

### Page 2 and 3 of Ex. A (50 Pages) Are in Scope of the Protective Order

Under Fed. R. Civ. P. 26(c)(1)(G), a court may, for good cause, issue a protective order (to require that **1)** a trade secret, or **2)** other confidential research, development, or **3)** commercial information, not be revealed or be revealed only in a specified way.  A party that seeks its information be protected from disclosure under Fed. R. Civ. P. 26(c)(1)(G) Rule must 1) establish that

the information falls into one of three categories discussed above, and 2) demonstrate that its disclosure might be harmful to the party seeking protection. In re Cooper Tire, 568 F.3d at 1190 (quoting Centurion, 665 F.2d at 325).  To establish the requisite harm, the party seeking protection must make a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, for each particular document it seeks to protect that harm will result if no Protective Order is granted."  Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130-31 (9th Cir. 2003) (citing Phillips v. Gen. Motors, 307 F.3d 1206, 1210-11 (9th Cir.2002)).

Walmart had failed to meet its burden of proof to make a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements, for each of the 50 pages identified on page 2 and 3 of Ex. A that harm[1] will result if no protective order is granted". For examples, item 9, 15 and 20 should not be protected from disclosures.  **Item #9:** Email communication regarding approvals from Jacqui Canney, EVP, Global People Division, Walmart Inc., Ben Hasan, SVP and Chief Culture, Diversity, and Inclusion Officer, and Lance Lanciault, SVP of Global Ethics, to deduct Plaintiff's annual bonus based on made-up charges against him, **Item # 15:** Email between Lance Lanciault, SVP of Global Ethics, and Anne Myong, CFO Walmart Global eCommerce, on 12/23/2016 regarding the closure of the investigation by Global Ethics into Plaintiff's 12/20/16 complaint (3 days after it was opened) and transferring the investigation to the local business in San Bruno, CA for further investigations, and **Item # 20:** Emails among Marc Lore, CEO Walmart.com, Michael Bender, COO Walmart.com, and Becky Smith, SVP HR Walmart.com, regarding Plaintiff's email complaint to Marc Lore and Michael Bender on 1/4/2017.  Plaintiff's allegations were characterized as pretty strong and discussion between Michael Bender and Becky Smith regarding investigation into Plaintiff's complaint. There is no proper basis for the Defendants' refusal to redesignate the 65 pages outlined in Ex. A.  Plaintiff respectfully request an order compelling the Defendants to remove the "Confidential" designation for the 65 pages outlined in Ex. A  and produced them without the confidentiality designation.

---

[1] The information in page 2 and 3 of Exhibit A does not contains sensitive information such as salary information, bonus structure, performance ratings, and third-party privacy information.  If there was such information, Walmart had meticulously redacted them. Walmart redacted third-party information in item 23-25.

**JOINT DISCOVERY LETTER**                                      **CASE NO. 3:18-CV-01631-VC**

1  **Defendants' Position**

2        Using the models approved by this Court, prior to producing documents the parties negoti-

3  ated, and Judge Chhabria approved, a stipulated Protective Order and an ESI protocol.  From al-

4  most the time they were entered, Plaintiff has objected to both.  For example, he wrote on No-

5  vember 12, 2018, that his former counsel "suppressed [his] litigation privileges" by "agree[ing] to

6  and/or [being] complicit in putting a protective order in place as a precondition to begin the initial

7  discovery disclosures as per GO 71."  He described this as a "unilateral decision" to "deploy[] a

8  'Catch and Lock Up' Strategy to lock up relevant information in the 'Protective Order' vault."

9  Mr. Huynh has since realized this position is untenable, but still seeks to re-visit the parameters

10  that have governed document designation and production throughout this litigation.  Defendants

11  have carefully reviewed each of the pages about which Plaintiff protests, and provided reasoned

12  responses in multiple meet and confer teleconferences and letters.  Yet he continues to object to

13  the confidentiality designations on 65 pages of Defendants' productions, making two primary ob-

14  jections: 1) certain documents fall outside the scope of the Protective Order, and 2) certain docu-

15  ments within the scope of the Protective Order do not merit protection under it.[2]

16        With respect to the first category, Plaintiff continues to misunderstand the meaning and

17  purpose of the Protective Order.  He argues the first five documents on Exhibit A, comprising a

18  total of 15 pages, fall outside the Protective Order, relying on a provision stating that information

19  "known to the Receiving Party" prior to production or information "in the public domain at the

20  time of disclosure" are not covered by the Order.  But he misstates the standard.  In full, it ex-

21  cludes from the scope of the Protective Order only "information" that is "known to the Receiving

22  Party prior to the disclosure or obtained by the Receiving Party after the disclosure from a source

23  who obtained the information lawfully and **under no obligation of confidentiality to the Desig-**

24  **nating Party**."  Dkt. 38-1, at 3:15–17 (emphasis added).  Under this paragraph, business-related

25  information or documents that he received in his capacity as a Director at Walmart under an ex-

26  pectation that they would be treated as confidential are properly designated confidential here as

27  

28  _____

[2]    Plaintiff summarizes his objections in "Exhibit A," a document that does not comply with this Court's operative standing order.  Because the present motion is tied to that document, Defendants refer to it as well.

JOINT DISCOVERY LETTER                          CASE NO. 3:18-CV-01631-VC

1    well.  In other words, contrary to his arguments, the mere fact that Plaintiff had access to a docu-

2    ment containing confidential information in the course of his employment with Walmart does not

3    mean that he now can control public dissemination of the information in it.  Indeed, according to

4    Plaintiff's logic, every single document he received or could access during the course of his em-

5    ployment cannot be designated confidential, rendering the Protective Order an empty letter.  But

6    even the parties agree that certain emails and information Plaintiff received in the course of his

7    employment were sent on a confidential basis for business purposes only.  Indeed, when Plaintiff

8    commenced employment with Walmart, he signed a "Proprietary Information and Inventions

9    Agreement" agreeing that any technical and financial information he learned or obtained while

10   employed by Walmart would be kept confidential.  He was not free to share the information pub-

11   licly while he was employed and is no more at liberty to do so now.

12        Similarly, the fact that a document contains *some* public information does not mean that

13   the document cannot be designated as confidential.  For example, while WM00000840—Item #4

14   on Exhibit A—includes certain metrics Walmart disclosed during an analyst call, the very same

15   email also describes confidential business decisions made by Walmart Marketplace leadership,

16   making the document as a whole confidential.  If Plaintiff wishes to disseminate statistics he

17   found online in public reports, or to include that information in court filings, nothing in the Pro-

18   tective Order prevents him from doing so.  He is not free, however, to disclose confidential emails

19   exchanged between Walmart employees that contain certain soundbites of publicly available in-

20   formation in the same paragraph as confidential strategy information never released by Walmart.

21        Plaintiff also misunderstands what it means for a document to be "in the public domain."

22   He erroneously argues that the position statement Walmart submitted to OSHA in response to

23   Plaintiff's formal complaint—Item #5 of Plaintiff's Exhibit A—is outside the scope of the Protec-

24   tive Order because it is "readily available to the public under FOIA."  While it is true that Plain-

25   tiff or other members of the public are free to submit FOIA requests, the right to make a request

26   does not mean that the government will grant it.  *See* U.S. Dep't of Labor, OSHA, Directive No.

27   CPL 02-03-007, Whistleblower Investigations Manual, at Ch. 23, § III (2016).  Government

28

8

1  agencies may in their discretion keep documents about individuals and their employment confi-

2  dential and do not automatically produce them in response to FOIA requests.  And, there is no ev-

3  idence here that OSHA has in fact produced this letter in response to such a request.  Here too,

4  Plaintiff's logic goes too far:  the mere fact that information could hypothetically be disclosed in

5  response to an unmade FOIA request does not make the document or its contents public.

6  As to Plaintiff's second category, he concedes that 50 of the 65 pages he is challenging

7  fall squarely within the Protective Order's definition of confidentiality, yet objects to the applica-

8  tion of that Order to the documents in question—for no articulated reason.  Indeed, he has never

9  explained why he wants the confidentiality designations on these documents removed.  The des-

10  ignations do not interfere with his access to the documents or his use of them in the discovery

11  process.  Should dispositive motion practice become necessary in this litigation, Walmart is will-

12  ing to engage in discussions with Plaintiff as to whether individual pages of documents need to be

13  filed under seal, to attempt to reduce such filings and any burden they create.  In the meantime, he

14  offers no rationale for his request.

15  By contrast, if the designations were removed, Walmart would risk publicity of its confi-

16  dential business information.  The documents at issue include data and other information about

17  Walmart's bonus payment structure, salaries for various positions, department-specific perfor-

18  mance targets, procedures for internal investigations of HR and ethics complaints, and various

19  other non-public information.  The documents also include information about salaries, job titles,

20  and performance ratings of third-party current and former employees.  Disclosure of this infor-

21  mation would reduce Walmart's ability to compete fully and fairly for talent in a highly competi-

22  tive marketplace, undermine its strategy in the highly competitive e-commerce space, and harm

23  current and former employees or clients of Walmart who are not involved in this litigation.

24  Two additional practical points underscore why Defendants' confidentiality designations

25  should remain untouched:

26  1.  For several of the pages identified in both Part 1 and Part 2 of Exhibit A, Plaintiff pro-

27  duced an identical or nearly identical copy of the document and *also* designated it confidential.

28  For example, the following pages are duplicates or near-duplicates of documents produced by

9

1    Plaintiff and properly marked confidential in his productions: WM00002174–WM00002175,

2    WM00003948, WM00001827–WM00001829, WM00001317–WM00001320, WM0000929–

3    WM00000930, WM00000571, WM00001241–WM00001242, and WM00002035.  Where he

4    reached the same decisions about confidentiality, his challenge here is disingenuous.

5         2.  Certain snippets of information on select pages Plaintiff challenges are arguably not

6    confidential on their face; however, they fit squarely within the Protective Order when considered

7    in the context of the rest of the page or document.  And the ESI Protocol calls for confidentiality

8    designations on a document-by-document basis.  Dkt. 36, at p. 8–9.  This is consistent with Rule

9    34(b)(2)(E)(i) which requires parties to "produce documents as they are kept in the usual course

10   of business."  Accordingly, Walmart did not break up individual documents into confidential and

11   non-confidential portions for discovery purposes.  Here too, that aligns with Plaintiff's own prac-

12   tice of applying confidentiality designations on a whole document basis in his own productions.

13        For all of these reasons, Defendants have repeatedly offered to work with Plaintiff to at-

14   tempt to minimize any inconveniences caused by the confidentiality designations in this case with

15   respect to any filings.  To avoid any possible ambiguity, Walmart again here commits to discuss

16   in good faith whether individual pages or lines of documents need to be filed under seal.  But

17   there is no reason offered to Walmart to make the changes Plaintiff seeks here.

18        Finally, although it is not germane to this dispute, Plaintiff states that Defendants "sur-

19   prise[d]" him by producing 2,350 pages of documents that were responsive to his discovery re-

20   quests on February 12, the day after he told the Court that he thought he may have been preju-

21   diced by professional misconduct by counsel on both sides.  To be clear, the February 11 discov-

22   ery hearing and February 12 production events are unrelated, and Plaintiff attempts to draw a cor-

23   relation where none exists.  Both sides agreed to produce documents on a rolling basis, and De-

24   fendants' February 12 production was in process well before Plaintiff's false and baseless Febru-

25   ary 11 accusation.  Indeed, since that date, Walmart has continued to produce documents on a

26   rolling basis, as has Mr. Huynh.

27

28

10