UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRI MINH HUYNH,<br><br>        Plaintiff,<br><br>    v.<br><br>WAL-MART ASSOCIATES, INC., et al.,<br><br>        Defendants. | Case No. 18-cv-01631-VC<br><br>**ORDER GRANTING SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 113, 125, 127, 137 |

Walmart seeks summary judgment on Huynh's claims under the Sarbanes-Oxley Act, under the California Whistleblower Protection Act, and for wrongful termination in violation of public policy under California law.

To prove his two whistleblowing claims, Huynh first has the burden to show a prima facie case, which includes showing that he engaged in protected activity (i.e. whistleblowing), and that he suffered an adverse employment action that was caused in some degree by the protected activity. *See Van Asdale v. International Game Technology*, 577 F.3d 989, 996 (9th Cir. 2009) (requiring under Sarbanes-Oxley "circumstances . . . sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action"); *Patten v. Grant Joint Union High School District,* 134 Cal. App. 4th 1378, 1384 (2005) (requiring a "causal link"). If Huynh can make a prima facie case, then under federal law the burden shifts to Walmart to show by "clear and convincing evidence" that it would have taken the same adverse action with respect to Huynh in the absence of any protected activity. *Van Asdale*, 577 F.3d at

1004. The precise standard under California law is less clear, but it seems that Walmart must produce evidence showing a legitimate, nonretaliatory reason for the adverse employment action, after which the burden shifts back to Huynh to present evidence that Walmart's proffered reasons are merely pretextual. *Patten*, 134 Cal. App. 4th at 1384; *see also* California Labor Code § 1102.6 (providing "clear and convincing evidence" standard for defense to section 1102.5 claims); Judicial Council Of California Civil Jury Instruction 4604 (advising application of section 1102.6 only in "mixed-motive" cases); *Mokler v. County of Orange*, 157 Cal. App. 4th 121, 138 (2007) (burden-shifting framework applies when plaintiff relies on circumstantial evidence).

It's doubtful that Huynh has produced enough evidence to support a prima facie case. He argues in his brief that he raised genuine whistleblowing concerns orally to his supervisor Seth Beal in a meeting prior to Beal's decision to include Huynh in impending layoffs. But Huynh cites no supporting declaration, and there is little evidence in the record that Huynh raised concerns to Beal about Walmart's allegedly unlawful activities.[1] There is also no actual evidence that this meeting, assuming it took place, played any causal role in Beal's decision to terminate Huynh's employment. Huynh is thus left relying entirely on the fact that the adverse action occurred a short period of time (here, a few months) after the purported protected activity, which courts often find sufficient to raise the inference, for purposes of a prima facie case, that there

---

[1] The Court has been provided only excerpts from Huynh's deposition, rendering it difficult to analyze his testimony there, but he appears to have testified to raising at least some kind of concerns at an October 2016 meeting with Beal. Dkt. 123-1 at 93. Huynh's claim is also somewhat corroborated by the fact that ten days after the purported meeting, Beal sent out an email to colleagues noting that multiple people had raised concerns to him recently about Marketplace's commission structure. *See* Dkt. 114-28 at 2. Otherwise, Huynh's opposition brief references numerous instances when he purportedly raised concerns to supervisors at Walmart prior to October 2016, using the citation "(Exhibit)," but the Court has not been able to identify any evidence supporting any of these allegations in any of Huynh's copious filings.

was a causal connection between the two. *Van Asdale*, 577 F.3d at 1003; *Morgan v. Regents of University of California*, 88 Cal. App. 4th 52, 69 (2000). But in this case, as discussed below, the reasons for Walmart's inclusion of him in the layoffs are so strong that the short time period is arguably not enough to get Huynh past this initial hurdle.

But even assuming Huynh could make out a prima facie case, Walmart is nonetheless entitled to summary judgment. Walmart has produced a mountain of evidence that Huynh was a poor-performing employee, and that its inclusion of Huynh in a significant round of layoffs was unconnected to any whistleblowing. Huynh was the subject of a hostile work environment complaint that the company substantiated in part. Dkt. 121-92; Dkt. 121-90 ¶ 21; Dkt. 121-8 ¶ 15. He likely gave unauthorized comments to the news media, resulting in Walmart placing him on a permanent media ban.[2] Dkt. 114-3 at 2; Dkt. 118 ¶ 9; Dkt. 121-8 ¶¶ 29, 30; Dkt. 115-14; Dkt. 123-1 at 58. He was accused of sexual harassment, which Walmart concluded took place and resulted in Huynh receiving a formal written warning.[3] Dkt. 121-76 ¶ 11; Dkt. 114-7 at 2; Dkt. 118 ¶¶ 8, 10; Dkt. 121-8 ¶ 35. Indeed, a Walmart ethics and compliance manager expressed to HR the possibility of terminating Huynh after these events, and Huynh's supervisor also considered termination at that time. Dkt. 118-1 at 2; Dkt. 121-8 ¶ 36; Dkt. 121-38 ¶ 26. Huynh received repeated feedback from his supervisors and HR about needing to improve his ability to communicate and collaborate appropriately with his colleagues, and was told that improvement in this area was important for him to have a future at the company, but there was no lasting improvement. Dkt. 117-1 at 7; Dkt. 117-2 at 12; Dkt. 121-92 at 4; Dkt. 121-90 ¶¶ 14,

---

[2] Huynh insisted at the time that he was misquoted by the media, but the media ban suggests that Walmart did not credit that explanation. *See also* Dkt. 121-38 ¶ 24 (employee recalling that "Mr. Beal and the Press Relations team were livid.").

[3] Walmart's investigation concluded that "It seems that though there was no apparent ill intent with these situations, Tri's action[s] show an inability to demonstrate good judgement – this is a major gap in Tri's ability as a leader." Dkt. 121-84 at 5

19, 20, 25-26; Dkt. 117-4; Dkt. 121-50 at 3; Dkt. 121-8 ¶¶ 11-15, 21, 26; Dkt. 121-38 ¶¶ 11, 14, 20-21, 23; Dkt. 121-44; Dkt. 115-7. Around six months prior to his termination, Huynh's supervisor relieved him of half of his responsibilities due to his poor performance. Dkt. 121-8 ¶ 24. He was not terminated individually, but rather as part of a significant layoff of around 200 employees and 200 contractors based on a company reorganization, which seems to have eliminated (or at least, significantly altered) the role that Huynh had previously been attempting to fill. Dkt. 121-76 ¶¶ 21-22; Dkt. 121-88 at 4; Dkt. 121-8 ¶¶ 46, 62, 77; Dkt. 121-38 ¶¶ 43-44; Dkt. 121-90 ¶ 43. Documents corroborate the declaration of Huynh's supervisor that Huynh was the only employee on the large "Marketplace" team considered to have a "Development Needed" performance rating. Dkt. 121-8 at ¶ 60; Dkt. 121-10 at 15. His supervisor and HR representatives also considered his behavior erratic and chose to terminate his employment early to avoid a potentially angry confrontation. Dkt. 121-38 ¶ 63; Dkt. 114-20 at 2; Dkt. 121-8 ¶ 72; Dkt. 114-21. And Walmart has produced evidence that other employees raised similar concerns to at least some of those Huynh raised as a purported whistleblower, that these employees were not terminated, and that Walmart was taking active steps to fix the problems during the fall of 2016, and earlier. Dkt. 121-8 ¶¶ 84, 86, 90(f); Dkt. 121-30 at 2; Dkt. 121-32 at 3; Dkt. 121-34 at 2; Dkt. 121-90 ¶¶ 47, 53-63, 68-74, 76, 78-84; Dkt. 121-102 at 4; Dkt. 121-104.[4]

      Huynh presents virtually nothing to contradict any of this evidence. His strongest evidence is that he did receive some positive performance evaluations during his time at Walmart. Dkt. 130-11; Dkt. 117-2. But that evidence is not sufficient to raise a genuine dispute about whether Huynh was going to be laid off regardless of any whistleblowing. *See Kim v.*

---

[4] In addition, the team investigating one of Huynh's ethics complaints noted that "HR also confirmed that the business, Seth Beal, has elected to separate Tri for non-ethics reasons." Dkt. 121-116 at 5.

*Boeing Co.*, 487 F. App'x 356, 357 (9th Cir. 2012) (affirming summary judgment where defendant produced clear and convincing evidence that it would have discharged the plaintiff regardless of any protected activity, and plaintiff failed to produce evidence creating a genuine dispute of fact on that issue); *Johnson v. Stein Mart, Inc.*, 440 F. App'x 795, 803-04 (11th Cir. 2011) ("[A] reasonable jury could not agree with [the plaintiff's] speculative retaliatory theory at trial."); *Guitron v. Wells Fargo Bank*, 619 F. App'x. 590, 591 (9th Cir. 2015). Indeed, Huynh has produced zero evidence of pretext – there is nothing in the record that remotely suggests that his termination had anything to do with his whistleblowing activities, all of which (besides the purported October meeting with Beal) occurred well after Beal had already made the initial decision to place Huynh on the layoff list. Dkt. 121-12; Dkt. 121-8 ¶¶ 81, 82; Dkt. 121-38 ¶¶ 42-60; *see Williams v. Gyrus Acmi, LP*, 723 F. App'x 545, 546 (9th Cir. 2018) ("Williams failed to raise a genuine dispute of material fact as to whether defendants' legitimate, non-discriminatory reasons for terminating her employment were pretextual.").[5]

Huynh doesn't appear to dispute that his wrongful termination claim is derivative of his whistleblowing claims in the circumstances of this case, and therefore fails if the underlying whistleblowing claims fail. Indeed, Huynh has not produced evidence that his purported protected activity was a "substantial motivating reason" for his termination. *Davis v. Farmers Insurance Exchange*, 245 Cal. App. 4th 1302, 1321 (2016).[6]

---

[5] Walmart is entitled to summary judgment using the normal presumptions and standards. Therefore, it is not necessary to grant Walmart's motion for spoliation sanctions on the basis of Huynh's willful destruction of evidence. Dkt. 121-76 ¶ 26. If a ruling were required on this issue, Walmart would almost certainly be entitled to an adverse inference that would further undermine Huynh's case. For example, the evidence Huynh destroyed might have shed light on the question of whether any protected activity took place in early October. This evidence would have been relevant to the causation inquiry, and would likely justify instructing the jury not to infer a causal connection based solely on the timing of Huynh's purported meeting with Beal.

[6] In addition to the briefing on the motion for summary judgment, the motion for sanctions, and the administrative motions to file documents under seal, the parties (primarily Huynh) filed

Walmart's motion for summary judgment is granted. A separate judgment will issue.

**IT IS SO ORDERED.**

Dated: January 14, 2020

_____
VINCE CHHABRIA
United States District Judge

---

sixteen additional and unsolicited briefs, many with multiple attached exhibits, raising many different issues. The Court has read these materials and considered them. In particular, the Court has considered all the evidence submitted by Huynh, even though much of this evidence was not submitted in a timely fashion and was not properly authenticated. None of this additional briefing provided information relevant to the dispositive summary judgment issues decided in this ruling. All outstanding motions are denied as moot (other than the three motions relating to sealing, which will be addressed in a separate order).